AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | | |
|---|---|---|
| In the Matter of the Search of | ) | **FILED** |
| *(Briefly describe the property to be searched* | ) | United States District Court |
| *or identify the person by name and address)* | ) | Albuquerque, New Mexico |
| | ) | Mitchell R. Elfers |
| Locations A-1 thru A-4, which are further described in | ) | Clerk of Court |
| Attachment A attached hereto and incorporated herein | ) | |

Case No.
**23 MR 234**
**23 MR 236**
**23 MR 237**
**23 MR 238**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C.§§ 841(a) 846 and 856; 18 U.S.C. §§ 922(g)(1), 924(c), and 1959 | PWID, conspiracy to PWID, maintaining a drug involved premises, being a prohibited person in possession of a firearm and ammunition, possession of a firearm in furtherance of a drug trafficking crime, violent crime in aid of racketeering (VICAR) |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jordan Spaeth, FBI Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ email and telephone _____ *(specify reliable electronic means)*.

Date: _____ 01/31/2023 _____

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

Karen B. Molzen, United States Magistrate Judge
_____
*Printed name and title*

TABLE OF CONTENTS

Page

I.      TRAINING AND EXPERIENCE                                          2

II.     OVERVIEW OF THE INVESTIGATION                                    3

III.    PURPOSE OF THE AFFIDAVIT                                         4

IV.     BACKGROUND ALLEGATIONS RE: GANGS AND DRUG TRAFFICKERS            6

V.      THE BTL CRIMINAL ENTERPRISE                                      9

VI.     THE HISTORY OF THE BTL                                           10

VII.    THE CONFIDENTIAL HUMAN SOURCES                                   12

VIII.   BTL MEMBERS MAINTAIN A STEADY SUPPLY OF WEAPONS                  17

IX.     STATEMENT OF PROBABLE CAUSE                                      19

        a.   The Target Subjects                                        19

        b.   The BTL Johnny Valencia Drug Trafficking Crew              21

        c.   Murder and Aggravated Assault and Battery in Aid of Racketeering   25

X.      THE SUBJECT PREMISES                                            26

XI.     CONCLUSION                                                      28

XII.    EXHIBIT 1                                                       29

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### INTRODUCTION

I, Jordan Spaeth, being duly sworn, do hereby depose and state as follows:

I.      **TRAINING AND EXPERIENCE**

1.      I am a Special Agent with the FBI and am recognized as a "federal law enforcement officer" within the meaning of Rule 41 of the Federal Rule of Criminal Procedure. I have been a sworn law enforcement officer for 14 years, serving as a police officer and FBI Special Agent. I have been with the FBI since 2018 and am currently assigned to the Violent Gang Task Force (VGTF). As a member of the VGTF my primary responsibility is to investigate criminal enterprises involving violent repeat offenders and gang members who participate in murders, narcotics violations, firearms violations, robberies, and other violations of federal law. Before being assigned to the VGTF, part of my responsibilities were to violent crime in Indian Country; which included crimes such as murder, aggravated assault with a deadly weapon, rape, and use of a firearm while in the commission of a violent crime.

2.      For the past three years I have been the government's lead case agent in the investigation of the Brew Town Locos (BTL) gang. Over the course of the investigation, I have interviewed several dozen BTL members (including leadership) and associates; executed more than 75 search and arrest warrants on BTL members, associates, sources of supply, residences, and property; seized more than $430k, a considerable amount of stolen property, a significant number of firearms and distribution quantities of controlled substances.

3.      My investigative training and experience includes, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for, and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. Over the course of my career, I have arrested several hundreds of persons for offenses relating to murder, armed robberies, firearm violations, bank robberies, illegal narcotics, and other criminal conduct. I have also been responsible for serving subpoenas and supervising cooperating sources, as well as analyzing phone records.

4.      Along with attending a police academy and the FBI academy, I have attended a homicide investigators course and an Indian Country investigators course which focused on murders and crime

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

scenes. I have investigated many crimes wherein a knife was used to cut someone. I know blood to be a by-product of homicide, especially when the homicide is committed with a knife. I know that many times when someone is stabbed, blood is deposited on the ground. I am aware that blood may remain at the crime scene for an extended period of time. I know that blood contains DNA evidence, and DNA evidence can be forensically examined to determine who the blood came from.

II.    **OVERVIEW OF THE INVESTIGATION**

5.    The BTL is one of New Mexico's oldest street gangs and was formed in the 1970's in the North Valley of Albuquerque, NM. Over the past 40 years BTL members have committed several murders. In early 2020 the FBI began investigating the criminal activities of the BTL based on several CHS reporting that the BTL was heavily armed, involved in violent crime and drug trafficking in Albuquerque, NM. Over the last three years, the FBI has executed dozens of search and arrest warrants, seized firearms, distribution quantities of controlled substances, and stolen property. The investigation was subsequently designated a United States Department of Justice Organized Crime Drug Enforcement Task Force (OCDETF) investigation, titled "Operation Spider Drop."

6.    Within the last several months VGTF agents learned about a drug conspiracy involving BTL member JOHNNY VALENCIA, aka: "PAYASO," BTL associates DELINDA BARELA, aka: "BLUE," JULIANNA LNU, aka: "LOCA," and BTL member JONATHAN SEGURA, aka: "ASSASSIN." Within the last two weeks, VGTF agents learned about two murders involving the Target Subjects, one of which was the murder of JOHN DOE (Victim-1), which remains unsolved. CHS reporting indicated that JOHNNY VALENCIA, aka: "PAYASO," murdered JOHN DOE at DELINDA BARELA's, aka: "BLUE," house, the murder was never reported to the Albuquerque Police Department (APD). In March 2022, DAVID PADILLA was arrested for the murder of Victim-2, which was committed in DELINDA BARELA's, aka: "BLUE," driveway. I have more fully described the unsolved murder of JOHN DOE in the pages that follow, along with the on-going drug conspiracy. The instant investigation pertains to a gang conspiracy between BTL members and suppliers to commit murder in aid of racketeering and the distribution of controlled substances within the district of New Mexico.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

### III. PURPOSE OF THE AFFIDAVIT

7.      This affidavit is submitted in support of four warrants to search the Subject Premises, which are believed to contain evidence of VICAR murder; conspiracies to distribute methamphetamine, fentanyl, and other controlled substances; and unlawful firearms possession (hereinafter referred to as the Target Offenses). All of which are being investigated by the FBI.

#### Subject Premises

  **A-1** 8009 Krim Drive NE, Albuquerque, NM;

  **A-2** 5024 El Paseo Drive NW, Albuquerque, NM;

  **A-3** 821 Ponderosa Drive NW, Albuquerque, NM; and

  **A-4** 127 Veranda Road NW, Albuquerque, NM.

#### Target Subjects

  **Subject 1**  JOHNNY VALENCIA, aka: "PAYASO;"

  **Subject 2**  DELINDA BARELA, aka: "BLUE;"

  **Subject 3**  JULIANNA LNU[1] aka: "LOCA;" and

  **Subject 4**  JONATHAN SEGURA, aka: "ASSASIN."

8.      I believe said items constitute evidence of violations of federal law, to include:

  a. 21 U.S.C. § 841(a) possession with intent to distribute controlled substance;

  b. 21 U.S.C. § 846 conspiracy to distribute controlled substances;

  c. 21 U.S.C. § 856 maintaining drug involved premises;

  d. 18 U.S.C. § 922(g)(1) being a prohibited person in possession of a firearm or ammunition;

  e. 18 U.S.C. § 924(c) possession of a firearm in furtherance of a drug trafficking crime;

  f. 18 U.S.C. § 1959 violent crime in aid of racketeering (VICAR).

9.      The specific premises to be searched have been described in Attachment A, which has been attached hereto and incorporated herein by reference. The particular evidence, fruits, instrumentalities to be seized

---

[1] Last Name Unknown (LNU)

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

by law enforcement are set forth in Attachment B, which has been attached hereto and incorporated herein.

10.     This affidavit also seeks the Court's permission to allow the FBI agents executing the search warrant to search the bodies of the <u>male</u>[2] Target Subjects for gang tattoos evidencing membership in or associated with the Brew Town Locos (BTL) or any other gang, and to photograph those tattoos. I believe such tattoos may constitute a conspiratorial overt act.

11.      I am submitting this affidavit based upon my experience and familiarity with the investigation. This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the Target Subjects and Subject Premises, as well as relevant background information. Any observations referenced herein that I did not personally witness were relayed to me in oral or written reports by members of the investigative team, who assisted during this investigation, which remains open.

12.     During my investigation, I have developed information I believe to be reliable from the following sources:

   a.   Information from the Drug Enforcement Administration (DEA), U.S. Probation Office, New Mexico Corrections Department (NMCD), Cibola County Correctional Center, Bernalillo County Metropolitan Detention Center Strategic Threat Intelligence Unit (STIU), and other law enforcement or corrections officials (also referred to herein as "agents"), including oral and written reports;

   b.   Results of physical surveillance;

   c.   Information provided by undercover agents and informants;

   d.   Information derived from consensually recorded conversations;

   e.   Information provided by cooperating defendants and/or the defense attorneys representing those

---

[2] Male BTL gang members get a spider tattoo on the inside of their left forearm, as they continue in the gang and get status they may get more elaborate tattoos, which represent how dedicated they are to the gang. I have not seen female BTL members to utilize tattoos to represent status in the gang. I do know that female gang members will get a spider tattoo on their left ring finger and female member's tattoos are not expected to carry the same relevance to gang activity and rank, which is why I am requesting the body of search authority only for the male members.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

persons;

f.  Information derived from lawfully intercepted wire communications, to include telephone, text, email, and video; and

g.  Records from the FBI National Crime Information Center, U.S. District Courts, New Mexico Courts, and the New Mexico Motor Vehicle Division.

## IV. BACKGROUND ALLEGATIONS REGARDING

## GANGS AND DRUG TRAFFICKERS

13.  Based upon my training, experience, and participation in the BTL investigation, as well as the investigation of other gang/criminal enterprises and DTOs, I am aware of the following information:

a.  Individuals engaged in the type of criminal conduct constituting the Target Offenses (VICAR; possession with intent to distribute controlled substance; conspiracy to distribute controlled substances; maintaining drug involved premises; being a prohibited person in possession of a firearm or ammunition; and possession of a firearm in furtherance of a drug trafficking crime) maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses. This documentary evidence includes telephone numbers, address books, travel receipts, notes referencing aliases or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as, MoneyPak, Wal-Mart, Green Dot, or other debit cards, bulk U.S currency, money collection logs, such as "tally" sheets, drug load sheets, shipping/mailing receipts, detention facility inmate number lists or addresses for inmates or detention facilities.

b.  Through my training and experience, I am familiar with the methods and means used by individuals engaged in the type of criminal conduct constituting the Target Offenses to purchase, transport, store, and distribute controlled substances and firearms. I am also familiar with how those individuals and organizations hide the substantial profits generated from their criminal activities. I

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

am aware that those individuals conceal firearms on their person as well as evidence of their drug trafficking, to include illegal narcotics and large amounts of United States Currency.

c.   I know that firearms are tools of the trade and instrumentalities of the type of criminal conduct constituting the Target Offenses particularly in instances involving subjects who have committed prior violent crimes and/or firearms violations. It has been my experience that criminals who illegally possess firearms often do not part with such firearms, as it may be difficult for criminals to acquire them. I know that gang members often possess firearms on or near their person, in their vehicles and residences.  I know that individuals who are prohibited from possessing firearms know they are not allowed to possess those firearms, therefore they will secrete those firearms within their vehicles, outbuildings, or residences.

d.   It has been my experience that individuals engaged in type of criminal conduct constituting the Target Offenses possess firearms to facilitate their illegal activities. I am aware that members of DTO's and gang members often possess firearms to protect the often substantial profits from selling narcotics. Also, I have learned that gang members possess firearms to threaten and assault others in an effort to establish their gang as powerful and successful.

e.   I know that members and associates of gang/criminal enterprises and DTOs often make substantial profits from their drug trafficking ventures. Often times, individuals engaged in drug trafficking do not deposit their profits into the bank so as to avoid detention by law enforcement. I know that individuals engaged in drug trafficking often keep large amounts of United States Currency at their residence. Along with United States Currency, I know that members engaged in drug trafficking may purchase expensive jewelry with their drug proceeds to avoid detection. Therefore, I know that members engaged in drug trafficking may have expensive jewelry which is the result of their drug trafficking operations.

f.   Individuals engaged in the type of criminal conduct constituting the Target Offenses are weary of law enforcement surveillance as well as other criminals who would steal their drugs or drug trafficking proceeds. Therefore, I know individuals engaged in drug trafficking to use surreptitious

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

and overt video and audio recording devices at their residences, store video and audio recordings in hard drives or other electronic storage devices and have real-time access to video and audio surveillance via applications on their smartphones.

g.  I know that members and associates of gang/criminal enterprises and DTOs have access to numerous cellular phones, often at the same time, in an effort to avoid law enforcement monitoring. I have observed gang members, who are involved in drug trafficking, routinely use pre-paid phones requiring no subscriber information, or fictitious subscriber names, to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further their illicit activities, photographs and videos of gang members, controlled substances, drug proceeds, or firearms. I have observed incarcerated members of gang/criminal enterprises utilize non-gang member's personal identification number when making prison/jail telephone calls to mask their conversations and decrease the likelihood institutional gang investigators will monitor the call. Members of gang/criminal enterprises and DTOs often use the same strategy to mask their ownership of vehicles, real property, and utility services, in an effort to avoid detection by law enforcement.

h.  In addition, I am also familiar with the use of text messaging, instant messaging, social media, and other messaging applications, used by gang/criminal enterprises and DTOs to advance their unlawful activities.

i.  I have learned individuals involved in the type of criminal conduct constituting the Target Offenses often conceal evidence of their drug trafficking activities on their person or in their residences and businesses, or the residences of friends or relatives, and in surrounding areas to which they have ready access, such as garages, carports, and outbuildings. They also conceal evidence in vehicles, including vehicles outside of their residences, so that they have ready access to it and so that they can hide it from law enforcement officers executing search warrants at their residences or businesses. Such evidence includes controlled substances, packaging materials such as baggies, rubber bands, shrink wrap, heat sealers, and drug presses, other drug use and trafficking

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

paraphernalia such as pipes and scales.

j.  It has been my experience members of gang/criminal enterprises and DTOs often maintain records of their transactions in a similar manner to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records often remain for long periods of time, even years, to memorialize past transactions, especially when debts remain open. I have located notes documenting the status of accounts receivable and accounts payable, and the names and phone numbers of suppliers, customers, and co-conspirators. I am aware such proceeds may be made to appear "clean" through a variety of means, including investments into legitimate enterprises and structuring deposits of large amounts of U.S. Currency into financial institutions in such a way so as to avoid the detection by law enforcement, as well as reporting requirements of banking institutions. These records can be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets, drug ledgers, IOUs, miscellaneous notes, money orders, customer lists, and phone address books, in either hard copy or electronic form. I have personally been involved in search warrants which resulted in the discovery of such records that were more than a year old.

k.  I have learned individuals involved in gang/criminal enterprises and DTOs possess items of identification, including but not limited to, driver's licenses, rent receipts, bills, and address books. These items may be relevant to the identity of those involved in the criminal enterprise, the possessor of the items seized, and occupants of the premises searched.

## V. THE BTL CRIMINAL ENTERPRISE

14.  The BTL gang, including its leadership, membership, prospects, and associates, constitute an enterprise as defined in 18 U.S.C. § 1959(b)(2), that is, a group of individuals associated in fact that engage in, and the activities of which, affect interstate commerce. The enterprise constitutes an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

15.  I am aware members and associates of the BTL commit, conspire, attempt, and threaten to commit

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

acts of violence to protect and expand the enterprise's criminal operations and reputation. Historically, the BTL generated income by distributing controlled substances, and participating in robberies and burglaries. To maintain the BTL criminal enterprise, members of the gang discuss:

    a.  drug acquisition, distribution, pricing and debt collection;

    b.  encounters with law enforcement;

    c.  the presence of suspected law enforcement agents or vehicles in the BTL neighborhood;

    d.  the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; and

    e.  possession of weapons and firearms, as well as ways to conceal these crimes.

16.    With regard to the possession and concealment of weapons and firearms, I am aware members of the BTL use, possess, and conceal firearms and edged weapons. These weapons are used and possessed by members of the gang to commit murders; attempted murders; assaults; robberies; to protect illicit drug supplies; to avoid arrest or escape from custody; to intimidate rivals, victims, witnesses; and for other criminal activity.

17.    I am aware some incarcerated members of the BTL have joined the SNM prison gang, while others have aligned themselves with the Burqueños prison gang. While in BOP custody, I am aware that some incarcerated BTL members have aligned themselves with the Sureños.

## VI. THE HISTORY OF THE BTL

18.    The BTL is a predominately Hispanic, multigenerational, gang founded in the late 1970s in the North Valley area of Albuquerque, New Mexico. The BTL gang presently claim the territory between Montano Road to the north, Interstate 40 (I-40) to the south, 12th Street  Northwest to the west and Edith Boulevard to the east.

19.    Over the years, the BTL gang expanded throughout New Mexico to include cliques in Grants, New Mexico, and Taos, New Mexico. Active and former BTL members, as well as gang detectives, have described the BTL as a powerful "old school" Albuquerque gang with a reputation for having cartel connections and an arsenal of firearms.

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

20.     I am aware BTL gang members identify themselves with distinct symbols, letters, words and numbers, to include[3]: an eight-legged spider, the letters "BTL," "BTS," "BT," or "BTSL," the words "Brew Town Locos," "Brew Town Spiders," "Brew Town Spider Locos," "Brew," and "Brew Town." BTL gang members also utilize the New Mexico Zia symbol and numbers 107, which correspond to the last three digits of the Zip Code 87107, which covers the general area the BTL operate within. BTL members frequently display these symbols, numbers, letters and words in their tattoos, graffiti, social media photos, drawings, and on clothing as a way of displaying their affiliation, loyalty, and commitment to the BTL.

21.     The BTL gang strives to have a reputation for being strong and powerful and must maintain its membership to continue functioning as an organization on the streets. If the BTL is perceived as being weak, then rival gangs could challenge and assault its members and take over its territory. This could cause the BTL to lose membership and eventually dissolve. If the BTL maintains a large membership and a reputation for being dominant, rival gangs may think twice before they challenge it. Similarly, victims and witnesses may think twice about assisting authorities with any prosecution attempt against the gang. FBI case agents have encountered potential witnesses and victims who were too afraid to speak with law enforcement and much less willing to testify against BTL members. A member of the BTL is expected to seek out and beat, stab, or shoot rival gang members and informants.

22.     BTL members frequently commit "branded" criminal acts, in other words, they commit crimes in the name of the gang. Examples of branded criminal acts include: gang members shouting references to BTL before or during a crime; gang members demanding drugs, or property because of their membership; and gang members killing or attempting to kill members of rival gangs.

23.     Weapons, to include blunt force and edged weapons, firearms, and ammunition are important tools of the trade and instrumentalities of the BTL gang.

24.     BTL prospective gang members must be ranked into the gang by senior members of the BTL, or they may be "born in" via a family member. Members who have cooperated with law enforcement are

---

[3] I have included several photographs of BTL gang tattoos and gang drawings as Exhibit 1, which has been attached hereto.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

removed from the gang through violent actions, such as beatings, robbery, and murder. Membership is otherwise for life.

25.     In January 2023, a video was posted online chronicling the history of the BTL[4]. The video is almost 15 minutes long and focuses on the violence and modus operandi of the BTL. The video is titled Albuquerque Gangland Ep.10 Brew Town Locos BTSL.

26.     As described in detail below, I believe the facts set forth in this affidavit provide probable cause to believe that the JOHNNY VALENCIA, aka: "PAYASO;" DELINDA BARELA, aka: "BLUE;" JULIANNA LNU,  aka: "LOCA;" and JONATHAN SEGURA, aka: "ASSASIN;" are involved in VICAR and conspiracy to distribute controlled substances around Albuquerque.

27.     More detailed descriptions and photographs of the Subject Premises and Target Subjects are contained within "Attachment A," which has been attached hereto and incorporated herein.

28.     Where I refer to conversations herein, they are related in substance and, in part, based on conversations between fellow agents, task force officers, other law enforcement personnel, or confidential human sources that assisted law enforcement. Any observations referenced herein that I did not personally witness were relayed to me in oral and/or written reports by agents of the FBI or other agencies. All figures, times, and calculations set forth herein are approximate. Unless otherwise specified, weights of controlled substances are approximate and are based on gross measurements.

## VII. THE CONFIDENTIAL HUMAN SOURCES

## UTILIZED IN THE INVESTIGATION

29.     During the course of this investigation, FBI case agents utilized several Confidential Human Sources[5] ("CHS" for singular and plural reference) to infiltrate and report on the activities of the BTL. Several cooperating defendants and citizen informants also reported on the criminal activities of the Target

---

[4] https://www.youtube.com/watch?v=wejSbtmHXDs
[5] The FBI utilize the term CHS to describe an informant; however, other agencies may use Confidential Source (CS), Confidential Informant (CI), Confidential Witness (CW), or Source of Information (SOI). Herein, I have also used the term CHS to describe a Cooperating Defendant (CD). I believe the various terms are interchangeable, but for the purpose of this affidavit I have only used the term CHS.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Subjects. 11 CHS were utilized to collect information in the instant investigation. In the paragraphs that follow, I have provided an overview of each CHS, to include

   a.   their basis of knowledge concerning the criminal conduct;

   b.   motivation to assist the FBI;

   c.   criminal history;

   d.   any compensation received from the government; and

   e.   a statement concerning their reliability.

30.      I have tried to provide sufficient information to the Court, while balancing the anonymity and safety of the various sources.

31.      **CHS-1** is a member of the BTL and has distributed drugs for the BTL for many years. CHS-1 is familiar with the history, membership, recruitment, drug trafficking, and other criminal activities of the BTL. CHS-1 was motivated to assist the FBI in hopes to receive a positive recommendation in a pending criminal matter. FBI agents arrested CHS-1 and CHS-1 was convicted of a felony offense. Information provided by CHS-1 has led to multiple arrests, seizures of considerable amounts of US Currency, firearms, and distribution quantities of controlled substances. CHS-1 has a prior felony convictions for assault with a deadly weapon and illegal re-entry by a previously convicted violent felon. CHS-1 has not been paid by the FBI for their cooperation. I believe the information provided by CHS-1 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-1 has provided.

32.      **CHS-2** is a BTL gang member and has been associated with at least one of the Target Subjects for several years. CHS-2 was stopped by agents and provided information on the BTL. I am unsure of CHS-2's motivation to assist the FBI, but believe it could be because CHS-2 hoped to provide information to law enforcement in hopes to avoid future prosecution. CHS-2 has felony convictions of receiving or transferring a stolen motor vehicle and possession of a controlled substance. I am aware that CHS-2 has a pending criminal matter related to a felon firearm charge. CHS-2 has received no monetary compensation for their cooperation. I believe the information provided by CHS-2 to be reliable because much of it has been

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

corroborated by independent investigation. I am unaware of any false or misleading information that CHS-2 has provided.

33.      **CHS-3** is an experienced gang member, drug trafficker, and BTL associate who has been associated with some of the Target Subjects for several years. CHS-3 has provided considerable assistance in two other FBI investigations and assisted the government in several controlled purchases of narcotics. CHS-3 was arrested by the FBI and was motivated to assist the FBI in hopes to receive a positive recommendation in a pending criminal matter. CHS-3 does have a lengthy criminal history which includes multiple felony convictions of burglary (commercial/automobile), trafficking a controlled substance, and possession of a controlled substance. CHS-3 has received no monetary compensation for their cooperation. I believe the information provided by CHS-3 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-3 has provided.

34.      **CHS-4** is a tenured BTL gang member and has been for more than 30 years. CHS-4 has sold drugs for the BTL for many years. CHS-4 has provided historical information regarding the BTL gang, its membership, and violent crimes perpetrated by the BTL. CHS-4 was arrested by the FBI and was motivated to assist the FBI in hopes to receive a reduced jail sentence. CHS-4 has felony convictions of aggravated battery with a deadly weapon, possession of a firearm by a convicted felon, armed robbery, burglary, armed drug trafficking, possession with intent to distribute. CHS-4 has received no monetary compensation for their cooperation. I believe the information provided by CHS-4 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-4 has provided.

35.      **CHS-5** is a successful BTL member and has distributed narcotics for the BTL for a significant amount of time. CHS-5 has been a BTL gang member for most of CHS-5's life and is familiar with the history, membership, recruitment, drug trafficking, and other criminal activities of the BTL. CHS-5 provided assistance regarding the background, membership, and associates involving the BTL, including drug trafficking activities. FBI agents arrested CHS-5 and CHS-5 was motivated to assist the FBI in hopes to receive a positive recommendation in a pending criminal matter. CHS-5 has prior felony convictions for

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

murder, shooting at or from a motor vehicle with great bodily harm, possession with intent to distribute heroin, and possession of a firearm in furtherance of a drug trafficking crime. CHS-5 has received no monetary compensation for their cooperation. I believe the information provided by CHS-5 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-5 has provided.

36.     **CHS-6** is a close associate to veteran gang members, is an experienced drug trafficker, and has been associated with the BTL for several years. CHS-6 is motivated to assist the FBI, in part, because they are hoping to clean up the community and motivated by monetary compensation. CHS-6 has been convicted of one felony for a crime of moral turpitude. CHS-6 has been paid approximately $5,600 by the FBI for their cooperation. CHS-6 has been assisting the FBI for almost two years and has provided considerable assistance in multiple other FBI investigations, outlined the BTL's structure, membership, and associates. CHS-6 has participated in several controlled drug buys from members of the BTL. The information that CHS-6 provided has led to more than 40 search warrants, 16 arrests, and the seizure of dozens of firearms, along with a significant amount of U.S. Currency and illegal narcotics. I believe the information provided by CHS-6 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-6 has provided.

37.     **CHS-7** is an associate to several BTL gang members and associates. I am unsure of CHS-7's motivation when he spoke to agents, but it may be to receive a positive recommendation in a pending criminal matter. CHS-7 has prior felony convictions for aggravated burglary, controlled dangerous substance on school property, gang related, and terroristic threats. CHS-7 has not been paid by the FBI for their cooperation. I consider the information CHS-7 provided to be reliable because much of it was corroborated through law enforcement investigation and physical surveillance. To my knowledge, CHS-7's information has not been found to be false or misleading.

38.     **CHS-8** is more of a citizen informant. CHS-8 agreed to assist the FBI to help rid the community of violent crime. CHS-8 has no felony convictions and has not been paid by the FBI for their cooperation. Much of the information provided by CHS-8 regarding target subjects has been verified through

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

independent investigation. I consider the information CHS-7 provided to be reliable because much of it was corroborated through law enforcement investigation and physical surveillance. To my knowledge, CHS-7's information has not been found to be false or misleading.

39.    **CHS-9** is an experienced drug trafficker, BTL associate and a close associate to violent gang members. CHS-9 has sold drugs with BTL members for many years. CHS-9 was previously arrested by the FBI and was motivated to help the FBI to prevent future charges. I am unaware of any pending criminal matters against CHS-9. CHS-9 has been convicted of the felony offense of trafficking a controlled substance. CHS-1 has not been paid by the FBI for their cooperation. CHS-9 has provided assistance in three other FBI investigations, which resulted in the authorization of 13 search warrants, the seizure of distribution quantities of methamphetamine and fentanyl, the seizure of two firearms, and one arrest. I believe the information provided by CHS-9 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-9 has provided.

40.    **CHS-10** is an experienced drug trafficker, and has been associated with some of the Target Subjects for several years. CHS-10 was arrested by agents, I am unaware of CHS-10's motivation since they spoke to HSI agents. CHS-10 has a felony conviction for drug trafficking and a pending criminal case for drug trafficking. CHS-10 has received no monetary compensation for their cooperation. I believe the information provided by CHS-10 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-10 has provided.

41.    **CHS-11** is an experienced BTL gang member, drug trafficker, and has been associated with some of the Target Subjects for several years. CHS-11 has provided assistance which has led to the issuance of several search warrants, arrests, and the seizure of distribution quantities of controlled substances. CHS-11 was arrested by agents and was motivated to assist the FBI in hopes to receive a positive recommendation in a pending criminal matter and to avoid future prosecution. CHS-11 does have a lengthy criminal history which includes multiple felony convictions of burglary (commercial/automobile), possession of a controlled substance, abuse of a child, possession of drug paraphernalia, conspiracy to commit a crime, tampering with evidence, aggravated assault with a deadly weapon, failure to appear, escape from jail,

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

receiving or transferring a stolen motor vehicle, possession of controlled substance, possession of controlled substance, to-witt; heroin. CHS-11 has received no monetary compensation for their cooperation. I believe the information provided by CHS-11 to be reliable because much of it has been corroborated by independent investigation. I am unaware of any false or misleading information that CHS-11 has provided.

### VIII. BTL MEMBERS MAINTAIN A STEADY SUPPLY OF WEAPONS

42.     I am aware members of the BTL use, possess, and conceal firearms and weapons. I have learned BTL members seek to be armed with weapons at all times, to include while incarcerated. Firearms are the preferred while on the street. Bladed or blunt weapons, such as knives, razor blades and metal fitting are the weapons often possessed and used in prison or jail settings. I aware jail officials recovered a shank from at least one BTL member. In the paragraphs that follow, I have briefly described several examples of violent crime and firearms seized from BTL members and associates.

43.     In September 2020, a BCSO deputy conducted a traffic stop on BTL member DANIEL SILVA, aka: "JINX," and another BTL a short distance from 5024 El Paseo Drive NW (Subject Premises A-2). Deputies located a stolen firearm and various controlled substances, to include heroin, inside the car. DANIEL SILVA, aka: "JINX," had more than $2,000 on his person. FBI case agents subsequently adopted the state case, charged DANIEL SILVA, aka: "JINX," he was later convicted in federal court for being a felon in possession of a firearm.

44.     In September 2020, two FBI Special Weapons and Tactics (SWAT) teams executed search warrants on two BTL houses. Approximately a dozen other BTL members and associates were detained on the premises. Agents located distribution quantities of fentanyl M-30 tablets, cocaine, drug packaging material, six firearms, high-capacity magazines, hundreds of rounds of ammunition, three ballistic vests, numerous cell phones, drug paraphernalia, and nearly $8,000 in drug proceeds were seized. Several BTL members were arrested and later convicted of federal drug and gun charges.

45.     In October 2020, DOMINIC SOTO, aka: "SHADOW," was arrested on an outstanding FBI warrant and found to be in possession of a firearm. DOMINIC SOTO, aka: "SHADOW," said he carried the pistol because he was a gang member and needed it for protection. DOMINIC SOTO, aka: "SHADOW," was

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

later convicted in federal court for being a felon in possession of a firearm.

46.     In April 2021, BTL suspected member EUSEBIO DEVARGAS was stopped on a bicycle a little after midnight by a BCSO patrol deputy within the vicinity of 127 Veranda Rd NW (Subject Premises A-4). EUSEBIO DEVARGAS initially tried to evade the deputy but was subsequently contacted a short distance later. EUSEBIO DEVARGAS told the deputy he had a pistol on his person and he was detained. Deputies queried EUSEBIO DEVARGAS and learned he had several prior felony convictions, to include a homicide conviction. The FBI subsequently adopted the state case and EUSEBIO DEVARGAS was convicted in federal court for being a felon in possession of a firearm.

47.     In early May 2021, case agents interviewed CHS-1 about the BTL. CHS-1 has been a member of the BTL for approximately 20 years. CHS-1 confirmed the BTL were primarily a drug dealing organization that protected their enterprise with firearms and violence. CHS-1 provided substantial information on the gang and several of the members, to include an eyewitness account of a 2017 cold-case homicide in which BTL member CHRISTOPHER SENA, aka: "FRESH," shot and killed Victim-3, a BTL associate, on the street within the BTL territory. CHS-1 advised that CHRISTOPHER SENA, aka: "FRESH," shot and killed the BTL associate because he had disrespected CHRISTOPHER SENA, aka: "FRESH."

48.     In June 2021, the FBI executed seven (7) residential search warrants for BTL gang members and associates. Agents located twenty (20) firearms, about three pounds of methamphetamine, heroin, loaded needles, distribution quantities of blue tablets marked M30 containing fentanyl, heroin, bulk U.S. Currency, a suppressor, extended and drum style magazines, and hundreds of rounds of ammunition. Following the search warrants, six BTL members were arrested and charged federally with drug and gun violations.

49.     In November 2021, BTL member CHRISTOPHER SENA, aka: "FRESH," was arrested for the murder of Victim-3 (described in paragraph 47).

50.     In May 2022, BTL member ADAM MANN, aka: "PACMAN," went to his neighbor's house and, while holding two pistols, yelled, threated the neighbor and attempted to kick in the front door. The attempted home invasion was caught on the neighbor's home security system. Two firearms were subsequently seized during an arson investigation at the residence of ADAM MANN, aka: "PACMAN." I

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

subsequently obtained a warrant and arrested ADAM MANN, aka: "PACMAN." During the arrest of

ADAM MANN, aka: "PACMAN," approximately $301,000 in drug proceeds was located and seized.

51.     In January 2023, VGTF agents obtained a search warrant on the residence and storage units

belonging to BTL firearms and fentanyl supplier LEONARD LUCERO, aka: "LEÑO." Pursuant to the

search warrant, agents seized 51 firearms, several thousand rounds of ammunition, dozens of firearm

magazines, items with BTL drawings, truckloads of stolen power tools, generators, power washers, air

compressors, appliances, and approximately 300 bottles of liquor; worth approximately $100,000.

52.     To date, the VGTF has seized more than 90 firearms from BTL members, associates, and suppliers.

## IX. <u>STATEMENT OF PROBABLE CAUSE</u>

### a. <u>The Target Subjects</u>

53.     In the paragraphs that follow, I have described the Target Subject's alleged involvement in a

pervasive drug distribution conspiracy plaguing the community. I have also sought to identify the Target

Subjects in greater detail and note whether they are BTL members or associates. I have also included the

arrest history of the Target Subjects, and where possible, noted offenses for which they were convicted.[6]

### JOHNNY VALENCIA, aka: "PAYASO"

54.     **Target Subject 1** JOHNNY VALENCIA is a veteran, self-admitted BTL gang member and

enforcer. JOHNNY VALENCIA has twenty (20) prior arrests for evading an officer, eluding an officer,

obstructing an officer, aggravated assault with a deadly weapon, tampering with evidence, possession of a

controlled substance, resisting arrest, residential burglary, failure to appear, armed robbery, trafficking

controlled substance (methamphetamine), failure to appear, and probation violation.

55.     JOHNNY VALENCIA has eight (8) prior felony convictions for aggravated assault with a deadly

weapon, possession of a controlled substance 3x, burglary (dwelling house), receiving or transferring a

---

[6] Criminal history records were obtained from the FBI's National Criminal Information Center (NCIC). I believe the records accurately reflect the subject's arrest record; however, conviction data is often not listed, or listed as "disposition unknown," because not all arresting agencies enter post-arrest data. In order to compile conviction data, I also consulted NM Courts online and the U.S. District Court Public Access to Court Electronic Records (PACER). Where possible, I have listed the subject's arrests and convictions.

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

stolen motor vehicle, armed robbery, and trafficking controlled substances (possess with intent to distribute meth).

56.     If JOHNNY VALENCIA is found to be in possession of a firearm, he may be eligible to be sentenced as an Armed Career Criminal.[7]

### DELINDA BARELA, aka: "BLUE"

57.     **Target Subject 2** DELINDA BARELA is a suspected Wells Park gang member and BTL associate who has 28 prior arrests in New Mexico and Wyoming for trafficking a controlled substance, conspiracy, distribution of a controlled substance (marijuana), forgery, possession of drug paraphernalia, possession of cocaine, conspiracy to possess cocaine, trafficking a controlled substance by distribution (cocaine), conspiracy to commit trafficking by distribution (cocaine), fail to appear, probation violation, contributing to the delinquency of a minor, harboring or aiding a felon, violation of parole, possession of a controlled substance, bringing contraband into a jail, receiving/ transferring stolen motor vehicles, and possession of a controlled substance within a drug-free school zone.

58.     DELINDA BARELA has ten prior felony convictions for possession of a controlled substance 5x, forgery 3x, battery against a household member (misdemeanor), burglary (commercial), and receiving/transferring a stolen motor vehicle.

59.     On July 3, 2022, DELINDA BARELA was arrested in Wyoming for possession with intent to distribute fentanyl; possession with intent to distribute methamphetamine; possession of a controlled substance, to wit fentanyl; possession of a controlled substance, to wit methamphetamine; taking a controlled substance, fentanyl, into a jail; and taking a controlled substance, cocaine, into a jail; Case No. 2022-9346. I am aware that recently DELINDA BARELA posted a $20,000 cash bail and has been released from custody.

### JULIANNA LNU, AKA: "LOCA"

---

[7] A statutory sentencing enhancement (See 18 U.S.C. § 924(e) and USSG §4B1.4) for a defendant convicted under 18 U.S.C. § 922(g) (prohibited person in possession of a firearm) who has at least three prior convictions for a "violent felony" or "serious drug offense" or both committed on occasions different from one another. A defendant sentenced as an Armed Career Criminal faces a mandatory minimum prison term of 180 months.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

60.     **Target Subject 3** JULIANNA LNU  aka: "LOCA" is a suspected Crazy Town Roswell (CTR) gang member, BTL drug supplier, and feared drug trafficker in Albuquerque. CHS reporting indicates that JULIANNA LNU aka: "LOCA," has killed several people and has never been caught.

### JONATHAN SEGURA, aka: "ASSASSIN"

61.     **Target Subject 6** JONATHAN SEGURA is a BTL member and drug trafficker who has eight (8) prior arrests in New Mexico for aggravated battery with a deadly weapon, possession of a controlled substance 4x, auto burglary, assault, aggravated assault with a deadly weapon, battery on a household member, and abuse of a child. JONATHAN SEGURA currently has a fail to appear warrant for his arrest, along with the caution statement of "Armed and Dangerous," Case No. D-202-DM-201400374.

62.     JONATHAN SEGURA has no prior felony convictions.

### b. The BTL Johnny Valencia Drug Trafficking Crew

63.     In May 2021, CHS-1 advised VGTF agents that JOHNNY VALENCIA, aka: "PAYASO," was a BTL member and drug trafficker who sold fentanyl tablets. CHS-1 knew that JOHNNY VALENCIA, aka: "PAYASO," normally had 2,000-3,000 fentanyl pills on hand. CHS-1 described to agents that JOHNNY VALENCIA, aka: "PAYASO," lived at Subject Premises A-2.

64.     In September 2021, CHS-2 advised agents that JOHNNY VALENCIA, aka: "PAYASO," usually carried a firearm, sold blues, and lived at 5024 El Paseo Drive NW (Subject Premises A-2).

65.     In June 2022, agents received a recorded jail call from MDC STIU officers from an inmate (Unwitting 1) at MDC to DELINDA BARELA, aka: "BLUE." In the call, DELINDA BARELA, aka: "BLUE," advised Unwitting 1 that she was moving to a house she just bought. DELINDA BARELA, aka: "BLUE," advised Unwitting 1 that she had several vehicles including a Tahoe and Audi. DELINDA BARELA, aka: "BLUE," also told Unwitting 1 that she would send dope to Unwitting 1 in the mail so that Unwitting 1  can sell it when they go to prison. DELINDA BARELA, aka: "BLUE," also talked about how JOHNNY VALENCIA, aka: "PAYASO" just pled guilty to a misdemeanor drug charge, which was originally a felony, and would pull a year of probation. (Agents later learned that the house DELINDA BARELA, aka: "BLUE," intended to move into was 8009 Krim Drive NE (Subject Premises A-1)).

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

66.     In June 2022, VGTF agents conducted surveillance at the residence of JOHNNY VALENCIA, aka: "PAYASO," (Subject Premises A-2). Agents observed a white Audi parked across the road from Subject Premises A-2 and then observed JOHNNY VALENCIA, aka: "PAYASO," driving a white Avalanche, park behind the Audi.

67.     In July 2022, CHS-3 advised VGTF agents that they had previously purchased heroin from DELINDA BARELA, aka "BLUE," who they knew to be a Wells Park gang member. CHS-3 knew that BTL member JOHNNY VALENCIA, aka: "PAYASO," lived at 5024 El Paseo Drive NE (Subject Premises A-2).

68.     In July 2022, CHS-4 advised VGTF agents that BTL member JOHNNY VALENCIA, aka: "PAYASO," sold a variety of narcotics and believed that JONNY VALENCIA, aka: "PAYASO," possessed guns.

69.     In August 2022, CHS-5 advised agents that they knew JOHNNY VALENCIA, aka: "PAYASO," sold a variety of narcotics.

70.     In October 2022, CHS-6 advised VGTF agents that JULIANNA LNU, aka: "LOCA," lived at 821 Ponderosa Drive NW, (Subject Premises A-3). CHS-6 knew that JULIANNA LNU, aka: "LOCA," had supplied JOHNNY VALENCIA, aka "PAYASO," with fentanyl and methamphetamine. CHS-6 advised that JULIANNA LNU, aka: "LOCA," had several "bodies" on her, meaning she had murdered people in the past; and grown men were afraid of her. CHS-6 believed that JULIANNA LNU, aka: "LOCA," had been to prison and always carried several firearms with her. CHS-6 also knew that the boyfriend to JULIANNA LNU, aka: "LOCA," was a wanted fugitive and hiding out at her house.

71.     CHS-6 described JULIANNA LNU, aka: "LOCA," as a heavy-set female with blond hair, she had tattoos on her face, and drove a purple ford Edge.

72.     CHS-6 also advised that DELINDA BARELA, aka: "BLUE," lived at 8009 Krim Drive Northeast (Subject Premises A-1) with her drug source of supply and JOHNNY VALENCIA, aka: "PAYASO," dated DELINDA BARELA.

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

73.     In November 2022, CHS-7 advised VGTF agents that they had been supplied with fentanyl and a firearm by a white female who lived at Subject Premises A-3. CHS-7 only knew the female's name as "LOCA."

74.     CHS-7 also advised agents that they also been supplied with fentanyl by DELINDA BARELA, aka: "BLUE."

75.     In January 2023, DELINDA BARELA, aka: "BLUE," was arrested in Wyoming on felony drug charges and held in jail. DELINDA BARELA, aka: "BLUE," later posted the $20,000 bail, in cash, and was released from custody.

76.     In January 2023, CHS-8 advised VGTF agents that a female lived at 8009 Krim Drive NE (Subject Premises A-1) and identified DELINDA BARELA, aka: "BLUE," by photograph, as the female who lived at Subject Premises A-1. CHS-8 also advised VGTF agents that they suspected the residents at Subject Premises A-1 to sell methamphetamine. CHS-8 had observed several Hispanic males with tattoos at Subject Premises A-1 and thought the subjects they observed at Subject Premises A-1 could be gang members because of their tattoos and violence. CHS-8 had regularly observed short duration stops at the residence by unknown individuals at all hours of the day and night. CHS-8 had observed loud Harley's at the Subject Premises A-1 stop by the residence at 2 or 3 am.

77.     CHS-8 advised VGTF agents that the last time they observed suspected drug traffic was within the last three weeks. CHS-8 also advised agents that there was a lot of gunfire that regularly came from the residence. CHS-8 also advised that there was a murder at the residence several months ago.

78.     In January 2023, CHS-9 advised VGTF agents that a BTL member named JONATHAN SEGURA, aka: "ASSASSIN," lived at 127 Veranda Road NW, (Subject Premises A-4) and sold Fentanyl pills. CHS-9 also advised that there were always people in and out of the property and JONATHAN SEGURA usually had a "boat" (1,000) of fentanyl pills in the house.

79.     In January 2023, CHS-6 advised VGTF agents that JONATHAN SEGURA, aka: "ASSASSIN," was a BTL gang member who squatted at and sold blues out of 127 Veranda Road NW, Albuquerque, NM (Subject Premises A-4).

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

80.     In January 2023, VGTF agents learned that CHS-10 had previously reported to other authorities that DELINDA BARELA, aka: "BLUE," and JOHNNY VALENCIA, aka: "PAYASO," sold fentanyl and methamphetamine from DELINDA BARELA's, aka: "BLUE," house, 8009 Krim Drive NE (Subject Premises A-1). CHS-10 told agents that DELINDA BARELA, aka: "BLUE," supplied fentanyl to CHS-10, who would then distribute them in Carlsbad, NM. CHS-10 also advised agents that JOHNNY VALENCIA, aka: "PAYASO," was security for DELINDA BARELA aka: "BLUE."

81.     In January 2023, VGTF agents observed a heavy set white female with blonde hair and face tattoos exit 821 Ponderosa Drive NW (Subject Premises A-3). Agents photographed the female. The female matched the physical description agents had been given for JULIANNA LNU, aka: "LOCA." JULIANNA LNU, aka: "LOCA," got into a purple Ford Edge, NM tag AZAP34, and went to 127 Veranda Road NW, Albuquerque, NM (Subject Premises A-4). JULIANNA LNU, aka: "LOCA," parked the Ford Edge partially in the road, blocking a driveway, and hastily walked to the door. JULIANNA LNU, aka: "LOCA," opened the front door and yelled inside. Agents then observed JULIANNA LNU, aka: "LOCA," conduct a hand to hand transaction with someone inside the residence, carry something back to the vehicle, and leave the area. CHS-6 later confirmed that JULIANNA LNU, aka: "LOCA," was the female that VGTF agents observed.

82.     In January 2023, VGTF agents observed JULIANNA LNU, aka: "LOCA," drive up to Subject Premises A-4 in a purple Ford Edge followed by a white pickup truck. The driver of the white pickup truck got into the front passenger seat, the unknown male had a bag in his hands, of the Ford Edge and exit approximately two minutes later. When the unknown male exited the Ford Edge he was not carrying the bag. JULIANNA LNU, aka: "LOCA," then went into Subject Premises A-4. Over the next approximately 20 minutes, agents observed a male exit Subject Premises A-4 and leave the area; a male exit Subject Premises A-4 and retrieve something from the Ford Edge; and two different unknown males enter Subject Premises A-4.

83.     From January 1, 2022, until January 12, 2023, APD recorded 60 calls for police service at Subject Premises A-1.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### c. Murder and Aggravated Assault and Battery

### in Aid of Racketeering

84.     In September 2021, JOHNNY VALENCIA, aka: "PAYASO," and another BTL member attempted to rob a BTL drug supplier while armed, APD responded and investigated the incident. APD officers obtained a warrant for one of the BTL members for aggravated assault and battery. VGTF and APD executed the arrest warrant on the BTL member.

85.     In September 2021, CHS-11 advised VGTF agents that JOHNNY VALENCIA, aka: "PAYASO," and another BTL member went to a BTL drug supply house to buy dope but the supplier would not sell to them (paragraph 96). CHS-11 advised that JOHNNY VALENCIA, aka: "PAYASO," had a gun, during the attempted robbery, and the gun belonged to JOHNNY VALENCIA, aka: "PAYASO."

86.     In January 2023, VGTF agents learned about an unsolved murder at 8009 Krim Drive NE (Subject Premises A-1) that occurred in late 2021 or early 2022. CHS-10 had previously reported to other authorities they knew that DELINDA BARELA, aka: "BLUE," and JOHNNY VALENCIA, aka: "PAYASO," sold methamphetamine and fentanyl from Subject Premises A-1. CHS-10 believed that JOHNNY VALENCIA, aka: "PAYASO," provided security for DELINDA BARELA, aka "BLUE."

87.     CHS-10 reported to agents that they were present when Victim-1 purchased narcotics from DELINDA BARELA, aka: "BLUE," at Subject Premises A-1. Victim-1 left and then returned to the residence. When Victim-1 returned, they complained about the quality and price of the narcotics to DELINDA BARELA, aka: "BLUE." JOHNNY VALENCIA, aka: "PAYASO," stepped in and began arguing with Victim-1.

88.     CHS-10 advised that they then watched JOHNNY VALENCIA, aka: "PAYASO," stab Victim-1 to death. JOHNNY VALENCIA, aka: "PAYASO," stabbed Victim-1 in the neck and then drug his body into the garage. CHS-10 did not know Victim-1's name or who he was. CHS-10 also did not know what happened to Victim-1 after JOHNNY VALENCIA, aka: "PAYASO," drug Victim-1's body into the garage. I do not believe the murder was ever reported to law enforcement and believe it occurred just over a year ago.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

89.     I believe that if Victim-1 was stabbed in the neck there would be blood that fell to the floor. I believe evidence of the murder of Victim-1 may still remain at Subject Premises A-1.

## X. THE SUBJECT PREMISES

### Subject Premises A-1

90.     Subject Premises A-1 is located at **8009 Krim Drive NE, Albuquerque, NM,** and may be described as a brick, split level residence with light brown brick, dark brown roof, and white trim. The numbers 8009 are posted to the right and above the front door, between the front door and a large window.

91.     Indicia of residence:

- On January 20, 2023, VGTF agents observed a white Chevrolet Tahoe, NM tag BGWK24 and registered to DELINDA BARELA, aka: "BLUE," parked at Subject Premises A-1.

- On January 30, 2023, VGTF agents observed the above Chevrolet Tahoe at Subject Premises A-1 being driven by JOHNNY VALENCIA, aka: "PAYASO."

- Court documents list Subject Premises A-1 as the residence of record for DELINDA BARELA, aka: "BLUE."

- CHS-6, CHS-8, and CHS-10 advised agents that DELINDA BARELA, aka: "BLUE," lived at Subject Premises A-1.

### Subject Premises A-2

92.     Subject Premises A-2 is located at **5024 El Paseo Drive NW, Albuquerque, NM,** and may be described as a single story residence with tan stucco siding, a red roof, and white trim. The numbers 5024 are posted on the mailbox at the curb.

93.     Indicia of residence:

- On January 21, 2023, VGTF agents observed a white Chevrolet Tahoe, NM tag BGWK24, registered to DELINDA BARELA, aka: "BLUE," at Subject Premises A-2. The Tahoe was parked out front of the residence and agents observed JOHNNY VALENCIA, aka: "PAYASO," under the hood working on the Tahoe.

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

- Subject Premises A-2 is the residence of record with the MVD for JOHNNY VALENCIA, aka: "PAYASO," and DELINDA BARELA, aka: "BLUE."

- Police reports and court records list Subject Premises A-2 as the residence of record for JOHNNY VALENCIA, aka: "PAYASO."

- CHS-1, CHS-2, CHS-3, CHS-6, and CHS-9 advised agents that JOHNNY VALENCIA, aka: "PAYASO," lived at Subject Premises A-2.

**Subject Premises A-3**

94.     Subject Premises A-3 is located at **821 Ponderosa Drive NW, Albuquerque, NM,** the Subject Premises may be described as a single story residence with brown stucco siding, a brown roof, brown trim, with a red door. The numbers 821 are posted on the curb.

95.     <u>Indicia of residence:</u>

- VGTF agents have observed a purple Ford Edge, NM tag AZAP34, parked at Subject Premises A-3 several times over the last two months. The Ford Edge is registered to Eric Sisneros and Vanessa Tapia.

- On January 12, 2023, VGTF agents observed JULIANNA LNU, aka: "LOCA," at Subject Premises A-3.

- CHS-6 advised agents that JULIANNA LNU, aka: "LOCA," drove a purple Ford Edge and lived at Subject Premises A-3.

- CHS-7 advised agents that JULIANNA LNU, aka: "LOCA," lived at Subject Premises A-3.

**Subject Premises A-4**

96.     Subject Premises A-4 is located at **127 Veranda Drive NW, Albuquerque, NM,** the Subject Premises may be described as a single story residence with tan stucco siding, a flat roof, and a white door. There are no numbers visible posted at the front of Subject Premises A-4.

97.     <u>Indicia of residence:</u>

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

- CHS-6 and CHS-9 advised VGTF agents that JONATHAN SEGURA, aka: "ASSASSIN," was living at Subject Premises A-4.

- On January 12 and 30, 2023, VGTF agents observed JULIANNA LNU, aka: "LOCA," at Subject Premises A-4.

## XI. CONCLUSION

98.     Based on the information contained herein, I submit there is probable cause for a search warrant authorizing the examination of the Subject Premises described in Attachment A to seek the items described in Attachment B for evidence pertaining to violations of the Target Offenses. This affidavit was reviewed by Assistant United States Attorney Paul Mysliwiec.

Respectfully submitted,

Jordan Spaeth
FBI Special Agent

Subscribed telephonically and sworn electronically on January 31, 2023.

HONORABLE KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

XII. Exhibit 1: BTL gang tattoos and gang art







**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**







AFFIDAVIT IN SUPPORT OF SEARCH WARRANT



**ATTACHMENT A**
**Person and Premises to be Searched**

Premises to be Searched: Subject Premises A-1 is located at **8009 Krim Drive NE, Albuquerque, NM,**
the Subject Premises may be described as a brick, split level residence with light brown brick, dark
brown roof, and white trim. The numbers 8009 are posted to the right and above the front door, between
the front door and a large window.

Color photographs are attached below.

   

Surveillance photo                                            Google Earth photo, March 2022

The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, and
storage containers designated for use by the Subject Premises. The search shall also include vehicles
parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the
Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement
observation, vehicle registration, subject admission or possession of an ignition key.

Biometric Access to Devices: During the execution of the search of the premises described herein, law
enforcement officers are also specifically authorized to compel the **defendant** to provide biometric
features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or
any other security feature requiring biometric recognition, of:

    1.  Any devices found at the premises, and

*KBM*

**ATTACHMENT A**
**Person and Premises to be Searched**

2.  Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments

3.  for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

4.  This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

*KBM*

**ATTACHMENT A**
**Person and Premises to be Searched**

Person to be searched: **JOHNNY VALENCIA, aka: "PAYASO,"** born in 1984, who appears in the

photograph below. The Defendant will be searched for tattoos evidencing membership in or association

with the Brew Town Locos (BTL) or any other gang. A color photograph of the Defendant follows:



Premises to be Searched: Subject Premises A-2 is located at **5024 El Paseo Drive NW, Albuquerque,**

**NM,** the Subject Premises may be described as a single story residence with tan stucco siding, a red

roof, and white trim. The numbers 5024 are posted on the mailbox at the curb.

Color photographs are attached below.

 

Surveillance photo                                    Google Earth photo, May 2014

The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, and

storage containers designated for use by the Subject Premises. The search shall also include vehicles

parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the

**ATTACHMENT A**
**Person and Premises to be Searched**

Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

Biometric Access to Devices: During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel the **defendant** to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments

3. for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

4. This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A**
**Person and Premises to be Searched**

Premises to be Searched: Subject Premises A-3 is located at **821 Ponderosa Drive NW, Albuquerque, NM,** the Subject Premises may be described as a single story residence with brown stucco siding, a brown roof, brown trim, with a red door. The numbers 821 are posted on the curb.

Color photographs are attached below.

 

Surveillance photo                                        Google Earth photo, January 2022

The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

Biometric Access to Devices: During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel the **defendant** to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

**ATTACHMENT A**
**Person and Premises to be Searched**

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments

3. for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

4. This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**ATTACHMENT A**
**Person and Premises to be Searched**

Person to be searched: **JOHN SEGURA, aka: "ASSASSIN,"** born in 1984, who appears in the photograph below. The Defendant will be searched for tattoos evidencing membership in or association with the Brew Town Locos (BTL) or any other gang. A color photograph of the Defendant follows:



Premises to be Searched: Subject Premises A-4 is located at **127 Veranda Drive NW, Albuquerque, NM,** the Subject Premises may be described as a single story residence with tan stucco siding, a flat roof, and a white door. There are no numbers visible at the front of Subject Premises A-4.

Color photographs are attached below.




Surveillance photo                                          Google Earth photo, January 2022

The search of the Subject Premises shall include the entire residence and all outbuildings, trash cans, and storage containers designated for use by the Subject Premises. The search shall also include vehicles parked at, or in front of, the Subject Premises provided such vehicle has an apparent connection to the

**ATTACHMENT A**
**Person and Premises to be Searched**

Subject Premises. Connection to the Subject Premises may be established by way of prior law enforcement observation, vehicle registration, subject admission or possession of an ignition key.

<u>Biometric Access to Devices:</u> During the execution of the search of the premises described herein, law enforcement officers are also specifically authorized to compel the **defendant** to provide biometric features, including pressing fingers (including thumbs) against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, of:

1. Any devices found at the premises, and

2. Where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments

3. for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

4. This warrant does not authorize law enforcement personnel to compel any other individuals found at the premises to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any device. Further, this warrant does not authorize law enforcement personnel to request that the Subject state or otherwise provide the password or any other means that may be used to unlock or access another person's device(s), including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

*KBM*

**ATTACHMENT B**
**Items to be Seized**

**Items to be Seized: A**ll evidence, fruits, and instrumentalities of violations of: 18 U.S.C. § 1959 violent crime in aid of racketeering (VICAR); 18 U.S.C. §§ 922(g)(1) and 924 being a prohibited person in possession of a firearm or ammunition; 18 U.S.C. § 924(c) possession of a firearm in furtherance of a drug trafficking crime; 21 U.S.C. §§ 841(a)(1) and 846  possession with intent to distribute controlled substances and conspiracy to distribute controlled substances; and 21 U.S.C. §56 maintaining a drug involved premises to include the following:

1. Evidence of membership or affiliation with the Brew Town Locos (BTL) street gang: to include any documents, photographs, drawings, writing, or objects depicting gang members names, initials, logos, monikers, slogans, or any item depicting potential gang membership, affiliation, activity or identity; "green light"/ disciplinary list, murder/assault list, witness or confidential informant lists, inmate lists, address/telephone number list, letter, law enforcement reports, jail or department of corrections reports, judgments, pre-sentencing reports, newspaper articles, computer generated reports/printouts, legal documents, detention facility inmate number lists or addresses for inmates or detention facilities;

2. Firearms, firearm parts, magazines, and ammunition;

3. Blood stained items;

4. Safes;

5. Controlled substances, drug packaging materials, and paraphernalia;

6. Documents, notes, or writings detailing other individuals involved in the distribution of controlled substances;

7. Large amounts of United States Currency;

8. Cellular telephones;

9. Video surveillance hard drives or storage devices; and

10. Articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including utility company receipts, rent receipts, addressed envelopes, and keys.